UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY AMBER BLUNT,

          Plaintiff,

v.

COUNTY OF MACOMB,

          Defendant.

Case No. 2:23-cv-11459

HONORABLE STEPHEN J. MURPHY, III

_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS [7]**

Plaintiff Kelly Amber Blunt sued Defendant Macomb County for unlawful arrest and malicious prosecution. ECF 1. Defendant moved to dismiss the complaint for failure to state a claim. ECF 7. The parties briefed the motion.[1] ECF 7; 9.[2] For the following reasons, the Court will grant the motion to dismiss.

**BACKGROUND**

Two Roseville City detectives, Jason Otto and Bridget Lines, conducted an undercover sting operation at the Victory Inn Motel in Roseville in June 2020. ECF 1, PgID 8. Detective Otto, acting as an undercover agent, met with several individuals at the motel, one of whom was a white female with tattoos on her arms. *Id.* at 9. While Otto was inside one of the rooms talking to a male, the female with tattoos entered and said that "the guys were currently cutting up Boy in the other room 428." *Id.*

---

[1] Defendant replied to Plaintiff's response, ECF 10, but the Court will not consider it because it was untimely. *See* E.D. Mich. L.R. 7.1(e)(2)(B).
[2] Based on the parties' briefing, the Court will resolve the motion on the briefs without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

"Boy" is apparently code for heroin. *See id.* Otto told the male that he wanted to buy $20.00 worth of "Boy." *Id.* The male led Otto to room 428 where Otto allegedly saw the same female with tattoos holding items "consistent with the packaging of narcotics." *Id.* at 10. Otto and another officer arrested two men at the motel for selling narcotics. *Id.* at 11.

Shortly after, Otto told Macomb County prosecutors that during his investigation, he obtained the name and birthdate of the female with tattoos. *Id.* Otto identified Plaintiff as the female. *Id.* But Plaintiff "never had any tattoos whatsoever, anywhere on her body" and "was obviously not . . . the individual" selling heroin at the motel. *Id.* at 12. Although Plaintiff was arrested and charged with "maintaining a drug house" in violation of Michigan law, Plaintiff was ultimately released, and all charges were dismissed. *Id.* at 13.

## LEGAL STANDARD

The Court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual

2

assertions, and draws every reasonable inference in the nonmoving party's favor. *Bassett*, 528 F.3d at 430.

But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

In a Rule 12(b)(6) motion, courts can only "consider the [c]omplaint and any exhibits attached thereto . . . [and] items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430 (citation omitted); *see also Decoration Design Sols., Inc. v. Amcor Rigid Plastics USA, Inc.*, 553 F. Supp. 3d 424, 427 (E.D. Mich. 2021) (Murphy, J.).

In *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court recognized that municipalities can be held liable under 42 U.S.C. § 1983 for deprivations of federal rights. But liability is limited to actions of the municipality and does not attach to constitutional violations committed by the municipality's employees. *Id.* at 690–91. In other words, the doctrine of *respondeat superior* does not apply in § 1983 actions against municipal units. *Id.* Indeed, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* The policy may be formal or informal. *See id.* Plaintiff "must identify the policy, connect the policy to the city itself[,] and show that the particular injury was incurred because of

3

the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citations and quotations omitted).

## DISCUSSION

Construing Plaintiff's allegations as true, the Court finds that Plaintiff failed to state a claim on which relief can be granted because Plaintiff did not allege facts to show that Defendant applied any official policy. Plaintiff claimed that "Defendant's supervision authorized, approved, or knowingly acquiesced in unconstitutional violations by its subordinate prosecutors." ECF 1, PgID 8. But "recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986) (quotation omitted). To be sure, Plaintiff clarified in her response to the motion to dismiss that the complaint "is not premised upon the *individual* liability of Defendant's prosecutors or under *respondeat superior*." ECF 9, PgID 94 (emphasis in the original). The Court will therefore determine whether Plaintiff sufficiently pleaded that Defendant's policy caused a constitutional violation.

Plaintiff alleged that Defendant "maliciously, and collectively made, influenced, and participated in the decision to prosecute Plaintiff" and "wrongfully initiated criminal charges against Plaintiff, without probable cause." ECF 1, PgID 4–5. In other words, the policy that Plaintiff identified was the decision to prosecute Plaintiff based on false information. *See id.* Plaintiff conceded that "the unconstitutional policy herein alleged is unwritten." *Id.* at 15. And it does not matter

4

whether the policy was written, verbal, or informal. *See Monell*, 436 U.S. at 690–91. It does not matter that the policy was created and implemented for a single situation. *Pembaur*, 475 U.S. at 481 ("municipal liability may be imposed for a single decision by municipal policymakers"). Instead, what matters is whether the policy was established by a "decisionmaker [who] possesses final authority to establish municipal policy." *Id*. Plaintiff alleged that Macomb County "prosecutors in their official capacities as assistant county prosecutors[] were the ultimate decision makers for [Defendant] and established prosecution policy for Defendant." ECF 1, PgID 14. Plaintiff elaborated that Macomb County "prosecutors unquestionably made and implemented the policy[] decision that was the 'moving force' of the constitutional violations." *Id*.

Taken as true, these allegations do not establish Defendant's liability because Macomb County assistant prosecutors are not, as a matter of law, "decisionmakers who possess final authority" to establish policies on behalf of the prosecutor's office. "[W]hether an official had final policymaking authority is a question of [S]tate law." *Pembaur*, 475 U.S. at 483. Macomb County is a Michigan charter county in which the elected Prosecuting Attorney appoints assistant prosecuting attorneys who answer and report to the Prosecuting Attorney. Macomb County Charter, art. IV, sec. 6.2; *see also* Mich. Comp. Law § 49.42 (assistant prosecuting attorneys serve at the pleasure of the prosecuting attorney who appointed them and perform all duties required by the prosecuting attorney); *id*. at § 49.153 (establishing the duties of the prosecuting attorney).

It may be true that the assistant prosecutors were the individuals who decided to prosecute Plaintiff *in that case*. But a single exercise of prosecutorial discretion is not a "policy" as the term was applied in *Monell* and *Pembaur*. "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur*, 475 U.S. at 482–83. If every decision by every prosecutor was considered a "policy," there would effectively by vicarious liability for municipalities. And that was explicitly not the Supreme Court's decision in Monell. 436 U.S. at 690–91.

Instead, the Supreme Court explained the difference between an official decisionmaker who can make policy— and whose unconstitutional acts are attributed to the municipality—and a decisionmaker who does not have final policymaking authority. *Pembaur,* 475 U.S. at 482–83; *see also id.* at 483 n.12 (describing an example of municipal employees who lack official policymaking authority but have discretion to make decisions). In *Pembaur*, the plaintiff sued Hamilton County under § 1983 for Fourth Amendment violations that occurred when two deputy sheriffs forcibly entered his business to serve capiases on plaintiff's employees. *Id.* at 472. The Deputy Sheriffs acted on an instruction given by the County Prosecutor. *Id.* at 473. That is, the assistant prosecutor did *not* make the decision. *Id.* Instead, the assistant prosecutor called the County Prosecutor, and the County Prosecutor made the final decision. *Id.* Because Ohio law established that the County Prosecutor could establish

6

county policy, the Supreme Court found that the County Prosecutor's decision could render the county liable. *See id.* at 484–85.

Here, Plaintiff alleged that the assistant prosecutors "were the ultimate decisionmakers" who "unquestionably made and implemented" the decision to prosecute Plaintiff based on false information. ECF 1, PgID 14. And Plaintiff did not allege that the lead Prosecuting Attorney of Macomb County was in any way involved in the decision to prosecute Plaintiff. *See generally* ECF 1. Plaintiff did not allege that the lead Prosecuting Attorney knew that the statements on which the prosecution was based were false. *See generally id.* Under *Monell* and *Pembaur*, the decisions of the assistant prosecutors cannot establish Defendant's liability because assistant prosecutors do not have final policymaking authority in Michigan. The Court will therefore dismiss the complaint against Defendant for failure to state a claim.

**WHEREFORE**, it is hereby **ORDERED** that the motion to dismiss [7] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: January 16, 2024